**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
CURTIS SCHOONOVER,               )
                                 )
            Plaintiff,           )
                                 )
     v.                          )   Case No.  12-1469-RDR
                                 )
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of           )
Social Security Administration   )
            Defendant.           )
```

**MEMORANDUM AND ORDER**

Plaintiff was involved in construction work and hurt his back in late 2005.  Plaintiff's back injury caused plaintiff to be depressed because of necessary lifestyle changes.  When conservative treatment options did not bring sufficient relief, plaintiff had back surgery in December 2006.  This helped plaintiff, but not enough for plaintiff to return to his previous job.  Plaintiff opted to go back to college in January 2008.  Plaintiff contends that the initial benefits he enjoyed from the back surgery diminished or proved illusory as he attempted to increase his activity by going to school and doing other functions.

On July 27, 2009, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of November 15, 2005.  On February 7, 2011, a hearing was

conducted upon plaintiff's applications.  The administrative law judge (ALJ) considered the evidence and decided on May 5, 2011 that plaintiff was disabled for the purposes of obtaining benefits for a period beginning on October 15, 2005 and ending on June 28, 2007.  Thus, this is a "closed-period" case in which it has been determined that a claimant was disabled for a finite period of time which started and stopped prior to the date of the ALJ's decision.  See Newbold v. Colvin, 718 F.3d 1257, 1260 n.1 (10th Cir. 2013)(describing closed-period cases).

This case is now before the court upon plaintiff's motion to reverse and remand that portion of the decision which determined that plaintiff's disability ended on June 28, 2007.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. <u>Newbold</u>, 718 F.3d at 1262. "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u>, quoting <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994) (quoting <u>Casias v. Secretary of Health & Human Services</u>, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. <u>Lax</u>, 489 F.3d at 1084, quoting <u>Zoltanski v. F.A.A.</u>, 372 F.3d 1195, 1200 (10th Cir. 2004)). "We neither reweigh the evidence nor substitute our judgment for that of [defendant]." <u>Branum v. Barnhart</u>, 385 F.3d 1268, 1270 (10th Cir. 2004)(interior quotation omitted).

II.  THE ALJ'S DECISION (Tr. 11-24).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 12-13). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

The ALJ's decision also describes a multi-step process for determining whether a claimant's disability continues through the date of decision. (Tr. 13-14). This process focuses upon whether there has been medical improvement relevant to the ability to work and whether such improvement would allow the

claimant to perform past relevant work or other work that exists in significant numbers in the national economy.

The ALJ made the following specific findings in his decision. First, plaintiff met the insured status requirements for Social Security benefits as of October 15, 2005. Second, plaintiff did not engage in substantial gainful activity after November 15, 2005. Third, plaintiff has had the following severe impairments: degenerative disc disease of the lumbar spine status-post surgery and depression. Fourth, plaintiff has not had an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff had the residual functional capacity from October 15, 2005 through June 27, 2007 to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) in that plaintiff could lift 10 pounds occasionally and frequently; stand and/or walk less than 2 hours in an 8-hour work day; sit for up to 6 hours in an 8-hour work day with the option to sit or stand at will; except that plaintiff was limited to simple unskilled work, with no contact with the general public. The ALJ also determined that with these limitations from October 15, 2005 through June 27, 2007, that plaintiff was unable to perform his past relevant work or any jobs that existed in significant numbers in the national economy.

Key to the dispute in this case, the ALJ found that, beginning on June 28, 2007, plaintiff had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that plaintiff had the ability:  to lift 20 pounds occasionally and 10 pounds frequently; to stand and/or walk 2 hours in an 8-hour day; to sit for up to 6 hours in an 8-hour workday, conditioned upon the need to alternate positions every 30 to 60 minutes from sitting to standing for up to 5 minutes while remaining at his work station; and to occasionally climb, balance, stoop, kneel, and crouch with no crawling or climbing of ladders, ropes or scaffolds, and no concentrated exposure to temperature extremes, vibration or work hazards.  The ALJ also determined as part of plaintiff's RFC that plaintiff should have no contact with the general public.

Thus, the ALJ determined that from the beginning of plaintiff's period of disability to the end of the period, there were medical improvements which allowed plaintiff to: perform the lifting requirements for light work instead of only sedentary work; to stand and/or walk for 2 hours in an 8-hour day instead of less than 2 hours; and to sit for up to 6 hours in an 8-hour workday with the option of alternating positions from sitting to standing every 30 to 60 minutes for up to 5 minutes, instead of having the option to sit or stand at will.

In spite of the medical improvements that the ALJ found, he continued to conclude that plaintiff could not return to performing his past relevant work. He decided, however, that with the medical improvements plaintiff could fulfill the requirements of jobs that exist in significant numbers in the national economy. The only jobs specified in the ALJ's decision were sedentary positions: printed circuit board assembler; wire wrapper/patcher; and sealer/closer of small packages. This was based upon the testimony of a vocational expert.

III.   STANDARDS FOR MEDICAL IMPROVEMENT.

Under Social Security regulations:

> Medical improvement is any decrease in the medical severity of [an impairment or impairments] which was present at the time of the most recent [finding of disability] . . . A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s).

20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(i). Any improvement must be linked to the ability to engage in substantial gainful activity in order to justify a finding that a disability has ended. 20 C.F.R. §§ 404.1594(b)(3) and 416.994(b)(1)(ii).

The ALJ must assess a claimant's RFC after any medical improvements and then compare the new RFC with the RFC before the medical improvements. Newbold, 718 F.3d at 1262. "If the

7

claimant can perform either [his] past relevant work or other work, disability will be found to have ended." Id. at 1263 (interior quotations omitted).

IV. EVIDENCE IN THE RECORD RELEVANT TO THE ALJ'S DECISION AND TO PLAINTIFF'S ARGUMENTS IN THIS CASE.

In the months following plaintiff's December 2006 back surgery, plaintiff engaged in some physical therapy. The ALJ made reference to physical therapy notes dated June 28, 2007 which reported comments from plaintiff that he could tolerate sitting for two hours, could walk for two miles, and stand for 45 minutes without an increase in pain. (Tr. 18, 420). The notes also reflect negative lumbar tests and straight leg raising tests, and 75% to 100% ratings in the range of motion of the lumbosacral region. (Tr. 420).

The ALJ's decision also refers to two check-the-box forms describing plaintiff's physical condition and functional capacity. One form is signed by Dr. David Hufford. (Tr. 411). This form, dated June 28, 2007, indicates that plaintiff can sit "frequently" which, according to the form, means 34% to 66% of the time. The form does not mention a need to alternate sitting and standing. The other form is signed by Dr. Pedro Murati. (Tr. 443). That form, dated August 6, 2007, indicates that plaintiff can sit "occasionally" or up to 33% of the time. The form also indicates that plaintiff would need to alternate

8

sitting, standing and walking. While the ALJ credited these forms, he believed that plaintiff was more limited in standing and walking. (Tr. 19). Both forms indicated that plaintiff could stand or walk "frequently."

The assessments by Drs. Hufford and Murati are in some accord with an examination by Dr. Paul Stein on December 11, 2007. Plaintiff reported to Dr. Stein that he could drive and that he performed all activities of daily living and personal hygiene independently. But, he also told Dr. Stein that he had back pain that occasionally reached 10 on a 10-point scale. (Tr. 465-466). He further reported that he could only stand or walk for 30 minutes and sit for 15 minutes, and that lying down was helpful to relieve pain. (Tr. 465). Dr. Stein concluded that plaintiff would need to alternate sitting, standing and walking at reasonable intervals. (Tr. 468). The ALJ agreed with the alternating sitting and standing limitations. (Tr. 20).

In January 2008, plaintiff visited his back surgeon, Dr. Nazih Moufarrij. He reported that the severe pain he had before the surgery had subsided, although he had occasional pain down his left leg and some stiffness, especially in the morning. (Tr. 483). In June 2008, plaintiff returned to Dr. Kirk Bliss, who was plaintiff's treating physician prior to his back surgery. Plaintiff reported that he had been doing "fairly well

9

overall" although he still had pain at times and was not able to do what he could prior to surgery. (Tr. 492). Dr. Bliss prescribed some pain medication. Plaintiff again visited Dr. Bliss in September 2008. At that time, Dr. Bliss diagnosed plaintiff with "chronic low back pain" and adjusted the pain medication. (Tr. 492).

In March 2009, plaintiff saw Dr. Bliss complaining of low back pain. (Tr. 491). Dr. Bliss's notes characterized the problem as "chronic" and worsening, and they related plaintiff's complaint of leg weakness and pain after walking across campus. He noted a weakly positive straight leg raising test on the left. Also, a radiology report in April 2009 noted "postsurgical laminectory defects" since a prior study in 2005. (Tr. 499).

In 2009 and 2010, plaintiff saw Dr. David Sollo six times. He complained of low back pain, more on the left side, but some on the right side. He also noted some numbness, tingling and weakness in his legs. He reported difficulty (sometimes great difficulty) walking from class to class, problems from prolonged sitting, and that lifting and walking made his pain worse. Dr. Sollo's notes indicated negative straight leg raises, but postlaminectomy changes at L4-L5 and L5-S1 and a broad-based disk bulge. Dr. Sollo administered epidural steroid injections, which gave plaintiff significant relief. Dr. Sollo's notes also

reflect that plaintiff was walking "fairly well" in August and November 2010.

In September and November 2010, plaintiff reported chronic back pain to Dr. Bliss and Dr. Rick Friesen. Plaintiff was referred back to Dr. Moufarrij, his back surgeon, who noted in September 2010 that plaintiff described constant burning pressure in the low back. There was a discussion of proceeding with a back fusion which Dr. Moufarrij favored. (Tr. 555).

Dr. Bliss, who had plaintiff as a patient from at least 2005 through 2011, signed a statement dated March 1, 2011 stating that:

> [A]fter [plaintiff's] recovery and rehabilitation from [the back] surgery, [plaintiff] could on better days (30% of the time, 50% before the activity of school) sit for fifteen minutes at a time and three hours out of eight hours. His ability to stand was much more limited. Walking was limited, and it increased his pain. He could with sufficient pacing lift 20-30 pounds (30 pounds would be pushing it) but not shoulder height or with bending, stooping, or crouching, which he had to avoid. On bad days (30-40% of the time when he became active with school, 10% when he was not active) he could sit just a few minutes at a time and had to lie down or recline most of the day, do only nominal lifting and very little walking such as around the house. During the remaining days, he functioned between the better and the bad days. He had more good days and fewer bad days when he was inactive, but these numbers were subject to change if he had been more active and especially if he overdid.
> Thus, even on his best days he could not tolerate an 8 hour schedule of even sedentary activity. Any schedule of activities would have to accommodate flexible hours for Mr. Schoonover to succeed because

11

> of the variability of his ability to function even in sedentary activities.

(Tr. 595).

The ALJ commented that he basically agreed with the sitting requirements in Dr. Bliss's March 1, 2011 report, but that the rest of the report was less persuasive because Dr. Bliss "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff] and seemed to uncritically accept as true most, if not all, of what [plaintiff] reported." (Tr. 22). After making this comment, the ALJ noted that Dr. Bliss's statements were inconsistent with plaintiff's comments to others, thus suggesting apparently that plaintiff was truthful with others but exaggerated the severity of his disability to Dr. Bliss. The ALJ also criticized Dr. Bliss for not documenting everything in his treatment notes. (Tr. 22).

The record contains statements from two of plaintiff's instructors at Wichita State University in 2009 and 2010. (Tr. 332-335). Each instructor stated that she observed plaintiff as being very uncomfortable and suffering from pain while sitting in class, having to squirm in his seat and move around in the classroom, and needing to be absent because of his medical issues, even though plaintiff was an enthusiastic and motivated student. The ALJ gave these statements (and a corroborating

12

statement from plaintiff's girlfriend) little credit because they did not originate from medical sources. (Tr. 23).

In addition, the record contains a vocational assessment performed by a human services counselor in August and September 2007. (Tr. 447-453). The counselor noted that although plaintiff was personable and cordial during the assessment, he had issues with back pain. (Tr. 451). Plaintiff was able to stay the entire five hours of the assessment on the first day. But, the second day, he could only stay part of the day and requested to be excused in the afternoon because of back pain. He missed the third day's appointment because pain medication caused him to oversleep. The counselor observed that plaintiff had to frequently get up and walk around in an attempt to manage his pain.

During the hearing before the ALJ, the vocational expert testified that jobs existed in substantial numbers for persons who could perform light work's lifting requirements and could "frequently" sit, stand or walk. (Tr. 87-88). The RFCs formulated by the ALJ, however, did not allow for frequent standing. The only jobs specified in the ALJ's decision as within plaintiff's RFC after June 28, 2007 were sedentary positions which the vocational expert testified "would be difficult to perform . . . with only occasional sitting." (Tr. 89).

V. THE COURT SHALL REVERSE AND REMAND THE DECISION TO DENY BENEFITS AFTER JUNE 28, 2007 TO RECONSIDER PLAINTIFF'S SITTING LIMITATION AND "OTHER SOURCES" EVIDENCE.

Plaintiff groups a large number of arguments under the broad claim that the ALJ erroneously determined plaintiff's medical improvement. In general, plaintiff disagrees with the ALJ's finding that he experienced an improvement in his condition which was so significant as to permit him to engage in substantial gainful activity. Plaintiff insists that his condition improved after his back surgery, but that when he increased his activity by attending college and performing other tasks, his back pain also increased. So, according to plaintiff, his improvement was too temporary, intermittent and insufficient to satisfy the requirements of substantial gainful employment.

The court will not address each of plaintiff's arguments. Instead, the court will focus upon two issues. One of those issues involves plaintiff's capacity to sit for periods of time. The ALJ's statements regarding plaintiff's capacity to sit appear to be contradictory. As plaintiff points out,[1] the ALJ stated in his opinion that he "basically agrees with the sitting requirements" in Dr. Bliss's March 1, 2011 report. (Tr. 22). These requirements are that on "better days" plaintiff can sit for fifteen minutes at a time and three hours out of eight

---

[1] Doc. No. 18, p. 12.

14

hours.[2] (Tr. 595). Despite agreeing with this assessment, the ALJ formulated plaintiff's RFC after June 28, 2007 as allowing plaintiff to sit for up to 6 hours in an 8-hour workday if he could alternate positions every 30 to 60 minutes from sitting to standing for up to 5 minutes. (Tr. 18). This RFC assessment is inconsistent with Dr. Bliss's assessment. It also is inconsistent with Dr. Murati's assessment that plaintiff could sit "occasionally" or up to 33% of the time. Further, it seems inconsistent with Dr. Hufford's assessment that plaintiff could sit "frequently" or 34% to 66% of a workday, and with plaintiff's comment (also cited by the ALJ) that he could tolerate sitting for two hours.[3] The discrepancy between the sitting limitations estimated by the doctors and plaintiff and the ALJ's six-hour limitation (with the option of alternating positions every 30 to 60 minutes from sitting to standing for up to 5 minutes) is significant because it relates to the extent and duration of plaintiff's alleged medical improvement and also because it affects the relevance of the vocational expert's testimony.

The ALJ relied upon a vocational expert for testimony regarding whether there were jobs in the national economy which

---

[2] According to Dr. Bliss, on "bad days" plaintiff could sit just a few minutes at a time and had to lie down or recline most of the day. (Tr. 595).
[3] It is also inconsistent with plaintiff's report to Dr. Stein that he could sit in one position for about 15 minutes and seems to be inconsistent with the "other sources" evidence discussed elsewhere in this opinion.

plaintiff could perform given RFC formulated by the ALJ. The jobs which met the 2-hour standing/walking requirements and the 6-hour sitting requirements of the ALJ were sedentary occupations. (Tr. 92-93). But, the vocational expert also testified that "it would be difficult to perform sedentary occupations with occasional sitting" and that there would be no sedentary occupations that could be performed with "sitting less than three hours." (Tr. 89). Almost all of the assessments in the record indicate that plaintiff can sit occasionally at most. Even Dr. Hufford's assessment lists plaintiff's "frequent" sitting limitation at 34% to 66% of a workday – less than six hours.

Because the sitting limitation listed for plaintiff appears inconsistent with the record and inconsistent with the ALJ's commentary regarding Dr. Bliss's assessment, and because the sitting limitation is critical to a consideration of the vocational expert's testimony, the court believes the finding of no disability after June 28, 2007 must be reversed and remanded for further consideration.

Secondly, the court believes that the ALJ did not give proper consideration to the "other sources" evidence in the record. This evidence includes the statements from plaintiff's girlfriend and the two college instructors. Although the ALJ remarked that these statements corroborated plaintiff's

16

testimony regarding his daily activities, the ALJ appeared to dismiss the statements because they did not derive from medical sources and were "of little if any value to determining the extent to which [plaintiff's] limited daily activities [were] the result of his medical impairments." (Tr. 23).

There is no dispute in this case that plaintiff suffers from medical impairments which have the potential to cause the pain of which he complains. The main issue in this case appears to be the genuine extent of plaintiff's limitations from the pain and pain medication in combination with plaintiff's depression. The "other sources" evidence from plaintiff's girlfriend and the college instructors appears relevant to that issue and the regulations permit such evidence to be considered to show the severity of impairments and how they affect work ability. 20 C.F.R. §§ 404.1513(d) and 416.913(d).

While the ALJ considered the statements to be corroborative, he also seemed to dismiss the statements simply because they did not derive from medical professionals. This is improper. In addition, the ALJ appeared to ignore the observation of the human services counselor who described plaintiff's pain from prolonged sitting during the vocational assessment.

Therefore, the court shall direct upon remand that the ALJ give full consideration to the other sources evidence using the

factors outlined in sections 20 C.F.R. §§ 404.1527(d) and 416.927(d). It is not necessary that the ALJ address every factor for weighing the evidence, but the discussion must be such that a reviewer can follow the ALJ's reasoning when the opinions may have an effect upon the outcome of the case. See Akers v. Colvin, 556 Fed.Appx. 754, 757 (10th Cir. 2104) (citing SSR 06-03p at *6); see also Crowder v. Colvin, 561 Fed.Appx. 740, 745-46 (10th Cir. 2014)(remanding case to reweigh other sources evidence where the evidence was rejected primarily because it did not come from an acceptable medical source).

## VI. CONCLUSION

The court shall reverse defendant's decision to deny plaintiff's applications for benefits for the time period after June 28, 2007. The court shall direct that this case be remanded to the Commissioner for further proceedings consistent with this opinion. This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 11th day of August 2014, at Topeka, Kansas.

s/RICHARD D. ROGERS  
Richard D. Rogers  
United States District Judge